**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MYRA STAMPS,** ) | |
| **individually, and on behalf of** ) | |
| **all others similarly situated,** ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| **V.** ) | **Civil Action  No._____** |
| ) | |
| **SOLIANT HEALTH, LLC,** ) | |
| ) | |
| ) | |
| *Defendant* ) | |

## COMPLAINT—CLASS ACTION

Plaintiff, MYRA STAMPS ("Plaintiff" or "Stamps"), individually and on behalf of all others similarly situated, complains and alleges as follows against Defendant, SOLIANT HEALTH, LLC ("Defendant," "Soliant Health," or "Soliant") based on personal knowledge, on the investigation of her counsel, and on information and belief as to all other matters:

## INTRODUCTION

1.     This is a civil action seeking monetary damages and injunctive and declaratory relief from Defendant Soliant Health, arising from its failure to

53

safeguard certain Personally Identifying Information[1] ("PII") and other sensitive, non-public financial information (collectively, "Personal Information") of thousands of its prospective, current, and former employees, resulting in Defendant's email systems being unauthorizedly accessed on or around June 25, 2024, and the Personal Information of employees therein, including of Plaintiff and the proposed Class Members, being disclosed, stolen, compromised, and misused, causing widespread and continuing injury and damages.

2.      On information and belief, on or around June 25, 2024, Soliant Health's employee email account systems were unauthorizedly accessed, resulting in the unauthorized disclosure of the Personal Information of Plaintiff and the Class Members, including names, Social Security numbers, government identification numbers, and financial account numbers (the "Data Breach"). [2]

3.      As explained below, Plaintiff and Members of the Class have suffered significant injury and damages due to the Data Breach permitted to occur by

---

[1] The Federal Trade Commission defines "personally identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Defendant, not every type of information included in that definition was compromised in the breach.

[2] *See:* Notice of Data Security Incident sent to Maine Attorney General, available at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/34b22947-95dd-4807-8b25-191cbe98983a.html

Soliant Health, and the resulting misuse of their Personal Information and fraudulent activity, decreased credit scores, monetary damages including out-of-pocket expenses, including those associated with the reasonable mitigation measures they were forced to employ, and other damages. Plaintiff and the Class also now forever face an amplified risk of *further* misuse, fraud, and identity theft due to their sensitive Personal Information falling into the hands of cybercriminals as a result of the tortious conduct of Defendant.

4.     On behalf of herself and the Class preliminarily defined below, Plaintiff brings causes of action for negligence, negligence *per se*, breach of express and implied contractual duties, unjust enrichment, and invasion of privacy. Plaintiff seeks damages and injunctive and declaratory relief arising from Soliant Health's failure to adequately protect her highly sensitive Personal Information.

## PARTIES

5.     Plaintiff Myra Stamps is a natural person and citizen of the state of Alabama, residing in Gadsden, Alabama, where she intends to remain.  Ms. Stamps is an employee of Soliant Health.

6.     Defendant, Soliant Health, LLC is a limited liability company organized and existing under the laws of the state of Georgia, with a principal place of business located at 5550 Peachtree Parkway, Suite 500 in Peachtree

Corners, GA 30092.

7.    Soliant Health is one of the nation's largest healthcare staffing companies. Soliant Health employs healthcare professionals in a variety of fields such as nursing and pharmaceutical positions.[3]

8.    Soliant Health represents that it "[pairs] talented caregivers with the best hospitals and healthcare providers" and "our personal commitment to enhancing the experience of both providers and professionals is what earned [us] the respect of our clients across the country." [4]

9.    Further, Soliant Health "[provides] our healthcare professionals with unmatched career opportunities, compensation and personalized service that goes beyond job placement."[5]

10.    Soliant Health has locations in Georgia, Texas, and South Carolina, with its principal corporate headquarters in Peachtree Corners, Georgia.[6]

## JURISDICTION AND VENUE

11.    Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (i) there are more than one hundred

---

[3] See Soliant Health website, available at https://www.soliant.com/about/ (last accessed on December 31, 2024).

[4] *Id*.

[5] *Id*.

[6] See Soliant Health website, available at https://www.soliant.com/contact/ (last accessed on December 31, 2024).

(100) Class Members; (ii) the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs; and (iii) some Class Members are citizens of states different than Soliant Health.

12.    This Court has personal jurisdiction over Soliant Health because it regularly and systematically transacts business in the State of Georgia, such that it can reasonably anticipate defending a lawsuit here. Moreover, this Court has jurisdiction over Defendant because its acts and omissions effected Plaintiff's property interests within the state of Georgia.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this district, and/or or a substantial part of property that is the subject of this action is situated herein.

## FACTUAL ALLEGATIONS

### A. Plaintiff and the Class Members entrusted their Personal Information to Soliant Health

14.    Plaintiff Stamps and the Members of the proposed Class are present and former employees and prospective employees of Soliant Health.

15.    Stamps is a current employee of Soliant Health.

16.    As a condition of employment, and/or of applying for employment with Soliant Health, Plaintiff and the Class Members were required by Soliant Health to confide and make available to it their sensitive and confidential

57

Personal Information, including, but not limited to, their PII, names and financial account information.

17.    Soliant Health required that prospective employees apply for employment online, through an online application portal, and to provide their Personal Information therein.[7]

18.    Upon applying for any employment online through Soliant Health's website, prospective candidates were required to acknowledge that "[I] have read and agree with Soliant Health, Inc. Candidate Privacy Information Statement that explains how Soliant Health, Inc. may use my information with regard to me being a candidate for work opportunities. I understand and acknowledge that this Statement, among other important disclosures, sets forth that Soliant Health, Inc. may share my data with its sister companies that are part of a nationwide organization focused on providing human resource services and solutions."[8]

19.    The Date Breach that is the subject of this civil action is not contemplated or permitted by Soliant Health's Candidate Privacy Information Statement or any other methods in which Plaintiff or the Class Members entrusted Soliant Health with their Personal Information.

---

[7] See Soliant Health website, available at https://www.soliant.com/jobs/ (last accessed on December 31, 2024).

[8] See Soliant Health website, available at https://www.soliant.com/jobs/apply/?jid=8205054&apply_cat=6083 (last accessed on December 31, 2024).

20.    Soliant Health acquired, collected, and stored a massive amount of said Personal Information of its employees, including Stamps and the Members of the proposed Class, which it stored in its electronic systems.

21.    By obtaining, collecting, using, and deriving a benefit from its employees' Personal Information, Soliant Health assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting their Personal Information from unauthorized disclosure.

22.    Plaintiff has taken reasonable steps to maintain the confidentiality of her Personal Information. Plaintiff, as an employee, relied on Soliant Health to keep her Personal Information confidential and securely maintained, to use this information for authorized purposes and disclosures only.

23.    Stamps has never been the victim of another data breach.

24.    Further, Soliant Health maintains a General Privacy Policy which "describes our privacy practices in relation to information we collect from you when you visit our website… or when you access or use any applications or features made available by us on or through or in connection with this Website or our services that link to this General Privacy Policy."[9]

---

[9] See Soliant Health website, available at https://www.soliant.com/privacy-policy/ (last accessed on December 31, 2024).

25.    Soliant Health's General Privacy Policy states: "Personal Information means information that identifies or relates to you, or as defined under applicable law."[10]

26.    Further, in its General Privacy Policy, Soliant Health represents that it needs to collect Personal Information for stated "business purposes:"

- to provide you, our clients and prospective clients, and our candidates and prospective candidates with our services.
- to best tailor content and resources according to your preferences.
- to respond to your requests or questions when you contact us.
- to help us create, publish, and improve content most relevant to you.
- to ensure that the content provided through the Website is presented in the most effective manner for you and for your device.
- to allow you to participate in interactive features of our Website, when you choose to do so.
- to further develop and improve the Website, and systems to better serve you. This mainly takes place in the context of new IT systems and processes so that information about you may be used in the testing of those new IT systems and processes.
- where necessary, to comply with any legal obligation.
- for our business contacts, to attempt to establish or strengthen a business relationship with you. This may include, for example, informing you how we can assist you with our services.
- we also may use your information in:
- investigating or responding to incidents and complaints, and/or

---

[10] *Id.*

- complying with investigations carried out by the police, government or regulators.[11]

27.    Additionally, Soliant Health's General Privacy Policy further that it collects Personal Information for the following "commercial purposes:"

- to send you direct messaging or marketing via email, text message, and/or other communication means. You may opt-out of receiving future messaging or marketing communications at any time by emailing us using the information listed in the "Contact" section below.  Messaging and data rates may apply for any SMS, MMS, and other electronic communications (typically, this is based on your carrier and service plan).  For more information, please visit our Terms of Use.
- to inform you about services, products, events that might be of interest to you (we may communicate by email, telephone, text message, mail and/or other communication methods).
- to send to you other information – such as Company upcoming events or newsletters – that may be of interest to you.
- to perform analytical research on our prospective client and candidate base, including the content, and the services/products in which they are interested.
- to transfer data to third parties (see the "Sharing with third parties" section below).[12]

28.    As stated above, candidates for job opportunities who apply through Soliant Health provide their Personal Information. Soliant Health collects the following information during that process:

- Identifiers: This includes your name (first and last), e-mail address, telephone number, physical address, copies of and

---

[11] *Id.*
[12] *Id.*

documents evidencing your identity and eligibility to work in the United States or other location as applicable, as well as photos, videos, or other recordings of your attendance at a video interview or training or similar sessions, where applicable. This also includes you online user account details if you create an account with us (whether via our website, our App or otherwise).

- Education and Qualifications: This includes your resume, CV, cover letter, educational background, training courses and internships, work experience, skill sets (for example, foreign language skills), third-party employment references or referrals, and any other information you listed on your resume or CV.
- Correspondence and Feedback: This includes records of correspondence, if you contact us, feedback about you from our staff and third parties and where you give feedback on others, and your own feedback about us and our services through our satisfaction surveys.
- Social Media Information: This includes Identifiers and other information you choose to make available on your public profiles on social media (Facebook, Twitter, LinkedIn, etc.), and other public locations (Job Boards, company websites, etc.).
- Information You Choose to Provide to Us: This includes any other information you provide.[13]

29.    In its Privacy Policy, Soliant Health also explains why they collect this Personal Information:

1. finding potential suitable jobs/assignments for you to apply for or that you may be interested in, helping you with training, or facilitating the process of applying for jobs/assignments. This may include for example sending Identifiers and Education and Qualification information, such as your resume or CV, to prospective employers for their consideration and keeping you

---

[13] *Id.*

informed of future work opportunities by email, telephone, mail, text message, and/or other communication methods (note that messaging and data rates may apply for any SMS, MMS, and other electronic communications (typically, this is based on your carrier and service plan));

2. for direct messaging or marketing via e-mail, text messaging, telephone, or otherwise;

3. to further develop, test and improve our website, Candidate Portal, App, or other existing or new systems/processes to better serve you;

4. to perform studies and statistical and analytical research, for example, to compare the effectiveness of our placement of candidates between different business sectors and geographies and seek to identify factors that can influence any differences we identify;

5. to transfer data to third parties (see below);

6. where necessary, to comply with any of the Company's legal or contractual obligations;

7. in order to:

a. promote the security and protection of people, premises, systems and assets;

b. monitor compliance with internal policies and procedures;

c. administer communications and other systems used by us (including internal contact databases);

d. investigate or respond to incidents and complaints;

e. promote internally that training sessions have taken place and utilise their content (in the case of photos or videos of training sessions), to market similar sessions internally and externally to third parties; and/or

f. participate in any potential or actual purchase or sale, or joint venture, of all or part of a business, that any member of Soliant wishes to participate in; and/or

8. As otherwise appropriate to our services to the extent applicable

63

law allows.[14]

30.    Soliant Health further provides that it "may disclose your data to third parties in furtherance of our services. We disclose your Personal Information in the following circumstances":

- To our suppliers. We engage suppliers to carry out administrative and operational work in support of our services and our relationship with you. The supplier(s) are subject to contractual and other legal obligations to preserve the confidentiality of your data and to respect your privacy, and they will only have access to and use the data they need to perform their functions. Some examples of these suppliers include, for example, IT suppliers (who host or support our IT systems, including information about you), premises management companies (who look after physical security at our buildings, and therefore need to know about you to allow access to our buildings) and back office finance and accounting management providers (who need to handle details of certain individuals in order to process accounts payable and receivable). We also engage suppliers who provide technology services and solutions such as, for example, for video interview and skills assessment tools. We may disclose to our suppliers your Identifiers, Education and Qualifications, Correspondence and Feedback, Social Media Information, and Information you Choose to Provide.
- To our clients/prospective employers. As a candidate, we will share your data with clients or prospective clients of ours who are offering jobs/assignments you may be interested in, or who we believe may be interested in your profile. We may disclose to our clients/prospective employers Personal Information such as your Identifiers, Education and Qualifications, Correspondence and

---

[14] *Id.*

Feedback, Social Media Information, and Information you Choose to Provide.

- Government & law enforcement. We also will share your data with government, regulators or law enforcement agencies if, at our sole discretion, we consider that we are legally obliged or authorised to do so or we believe it would be prudent to do so; and/or

- Corporate reorganization. As part of due diligence relating to (or implementation of) a merger, acquisition or other business transaction, we may need to disclose your data to the prospective seller or buyer and their advisers.[15]

31.     The Data Breach that is the subject of this civil action is not contemplated or permitted by Soliant Health's website Privacy Policy.

32.     Plaintiff and the proposed Class Members entrusted their Personal Information to Soliant Health solely for the purposes of applying for employment with Defendant and/or as a condition of employment, with the expectation and implied mutual understanding that Soliant Health would strictly maintain the confidentiality of the information and undertake adequate measures to safeguard it from theft or misuse.

33.     Plaintiff and the proposed Class Members would not have entrusted Soliant Health with their highly sensitive Personal Information if they had known that Soliant Health would fail to take adequate measures to protect it from unauthorized use or disclosure.

---

[15] *Id.*

65

**B. Plaintiff's and the Class Members' Personal Information was Unauthorizedly Disclosed and Compromised in the Data Breach.**

34.    Plaintiff Stamps is an employee of Soliant Health.

35.    As a prerequisite to employment, Plaintiff and the Class Members disclosed their non-public and sensitive Personal Information to Soliant Health, with the implicit understanding that their Personal Information would be kept confidential. This understanding was based on all the facts and circumstances attendant to their employment there, and the express, specific, written representations made by Soliant Health and its agents.

36.    Plaintiff and the Class Members reasonably relied upon Soliant Health's representations to her detriment and would not have provided their sensitive Personal Information to Soliant Health if not for Soliant Health's explicit and implicit promises to adequately safeguard that information.

37.    On or about October 29, 2024, Soliant Health began sending letters to the Class Members notifying them that their Personal Information had been compromised during the Data Breach ("Notice").

38.    According to Soliant Health's Notice, Defendant had "discovered suspicious activity associated with an employee's email account. Upon discovery, Soliant immediately took steps to address the issue and secure its email environment, including engaging a team of cybersecurity specialists, implementing a forced password reset, working with law enforcement, and

66

launching a comprehensive investigation."[16]

39.    Soliant Health acknowledged that "certain personal information may have been acquired without authorization" and "Soliant thereafter undertook a comprehensive review to determine the nature of the information, the individuals to whom the information pertained and the addresses for those individuals." That process was completed on October 3, 2024.[17]

40.    Soliant affirmed that additional safety and security measures were put into place to "enhance security and minimize the risk of a similar incident occurring in the future."[18]

41.    Soliant Health also provided information regarding steps that Plaintiff and the Class Members could take to protect their personal information in the future.[19]

42.    The Data Breach was preventable and a direct result of Soliant Health's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect employees' Personal Information.

43.    In addition, while Soliant Health allegedly discovered the Data Breach on June 25, 2024, Soliant Health failed to notify affected persons in a

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

67

timely manner until much later on or around October 29, 2024.

### C. The healthcare industry is a prime target for cybercriminals.

44.     Over the past several years, data breaches have become alarmingly commonplace. In 2016, the number of data breaches in the U.S. exceeded 1,000, a 40% increase from 2015.[20] The following year the healthcare sector was the second easiest "mark" among all major sectors and categorically had the most widespread exposure per data breach.[21]

45.     The Personal Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen in the Data Breach— most notably names and Social Security Numbers —is difficult, if not impossible, to change.

46.     The kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal,

---

[20] *Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center and CyberScout*, IDENTITY THEFT RESOURCE CENTER ("ITRC") (Jan. 19, 2017), https://www.idtheftcenter.org/data-breaches-increase-40-percent-in-2016-finds-new-report-from-identity-theft-resource-center-and-cyberscout/.

[21] *2017 Annual Data Breach Year-End Review*, ITRC, (Jan. 25, 2018), https://www.idtheftcenter.org/images/breach/2017Breaches/2017AnnualDataBreachYearEndReview.pdf.

explained, "Compared to credit card information, personally identifiable information… [is] worth more than 10x on the black market."[22]

47.    PII data for sale is so valuable because PII is so broad, and it can therefore be used for a wide variety of criminal activity such as creating fake IDs, buying medical equipment and drugs that can be resold on the street, or combining PII with false provider numbers to file fake claims with insurers.

48.    The value of Plaintiff's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

49.    Email phishing schemes "remain[] the primary attack vector for nine out of 10 cyberattacks."[23] Soliant Health did not elaborate on how the Data Breach happened, other than that three (3) employee email accounts were hacked.[24] Since "91% of ransomware attacks are the result of phishing exploits…" in the healthcare sector, it is more than plausible that the Data Breach was due

---

[22] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.
[23] Benishti, Eyal, *How to Safeguard Hospital Data from Email Spoofing Attacks*, INSIDE DIGITAL HEALTH, (Apr. 4, 2019), https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks.
[24] *See* n.32, *supra*.

to a phishing attack too.[25]

50.    Companies can mount two primary defenses to phishing scams: employee education and technical security barriers.

51.    From a technical perspective, companies can also greatly reduce the flow of phishing e-mails by implementing certain security measures governing e-mail transmissions. Companies can use a simple email validation system that allows domain owners to publish a list of IP addresses that are authorized to send emails on their behalf to reduce the amount of spam and fraud by making it much harder for malicious senders to disguise their identities. Companies can also use email authentication that blocks email streams that have not been properly authenticated.

**D. Soliant Health failed to sufficiently protect the Personal Information that Plaintiff and the Proposed Class Members had Entrusted to it.**

**a.  Soliant Health failed to adhere to FTC Guidelines.**

52.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[26] To that end,

---

[25] *Security Report Health Care – Hospitals, Providers and more*, CORVUS INSURANCE 2 (Mar. 3, 2020),
https://info.corvusinsurance.com/hubfs/Security%20Report%202.2%20-%20Health%20Care%20.pdf.
[26] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Sep. 2, 2015),
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Soliant Health, should employ to protect against the unlawful exposure of Personal Information.

53.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[27] The guidelines explain that businesses should:

    a.    protect the personal information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

54.    The FTC recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for

---

[27] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Sep. 28, 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[28]

55.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect PII, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

56.    Soliant Health's failure to employ reasonable and appropriate measures to protect against unauthorized access to employee PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### b. Soliant Health failed to adhere to industry standards.

57.    As stated above, the healthcare industry continues to be a high value target among cybercriminals. In 2017, the U.S. healthcare sector experienced over 330 data breaches, a number which continued to grow in 2018 (363 breaches).[29] The costs of healthcare data breaches are among the highest across

---

[28] *See Start with Security, supra* n.40.
[29] 2018 End of Year Data Brach Report, ITRC, (Feb. 20, 2019), https://www.idtheftcenter.org/ wp-content/uploads/2019/02/ITRC_2018-End-of-Year Aftermath_FINAL_V2_ combinedWEB.pdf.

all industries, topping $380 per stolen record in 2017 as compared to the global average of $141 per record.[30] As a result, both the government and private sector have developed industry best standards to address this growing problem.

58.     The United States Department of Health and Human Services' Office for Civil Rights ("DHHS") notes that, "[w]hile all organizations need to implement policies, procedures, and technical solutions to make it harder for hackers to gain access to their systems and data, this is especially important in the healthcare industry. Hackers are actively targeting healthcare organizations as they store large quantities of highly sensitive and valuable data."[31] DHHS highlights "several basic cybersecurity safeguards that can be implemented to improve cyber resilience which only require a relatively small financial investment, yet they can have a major impact on an organization's cybersecurity posture."[32] Most notably, organizations must properly encrypt PII in order to mitigate against misuse.

59.     The private sector has similarly identified the healthcare sector as particularly vulnerable to cyber-attacks both because of the of value of the PII that it maintains and because, as an industry, it has been slow to adapt and

---

[30] *Ibid.*

[31] *Cybersecurity Best Practices for Healthcare Organizations*, HIPAA JOURNAL (Nov. 1, 2018), https://www.hipaajournal.com/important-cybersecurity-best-practices-for-healthcare-organizations/.

[32] *Id.*

respond to cybersecurity threats.[33]

60.    Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry, Soliant Health failed to adopt sufficient data security processes, a fact highlighted in Soliant Health's Notice to affected persons in which it revealed that only after the Data Breach did it implement "additional technical safeguards to enhance the security of information in its possession."[34]

61.    Soliant Health failed to adequately train its employees on even the most basic of cybersecurity protocols, including:

    a.    How to detect phishing emails and other scams including providing employees examples of these scams and guidance on how to verify if emails are legitimate;

    b.    Effective password management and encryption protocols for internal and external emails;

    c.    Avoidance of responding to emails that are suspicious or from unknown sources;

    d.    Locking, encrypting and limiting access to computers and files

---

[33] *10 Cyber Security Best Practices For the Healthcare Industry*, NTIVA (Jun. 19, 2018), https://www.ntiva.com/blog/10-cybersecurity-best-practices-for-the-healthcare-industry.

[34] *See* n.32, *supra*.

containing sensitive information; and

e.     Implementing guidelines for maintaining and communicating
       sensitive data.

62.    Soliant Health's failure to implement these rudimentary measures
made it an easy target for the Data Breach that came to pass.

### E. Plaintiff and the Class Members were significantly injured by the Data Breach.

As a result Soliant Health's failure to prevent the Data Breach, Plaintiff Stamps
and the Class Members have suffered and will continue to suffer significant
injury and damages. They have suffered or are at increased risk of suffering:

a.     Misuse of Personal Information and fraudulent applications,

b.     Decrease in credit scores,

c.     The loss of the opportunity to control how Plaintiff's and the
       Class Members' Personal Information is used;

d.     The diminution in value of their Personal Information;

e.     The compromise, publication and/or theft of their Personal
       Information;

f.     Out-of-pocket costs associated with the prevention, detection,
       recovery and remediation from identity theft or fraud,
       including the purchase of identity theft protection insurance
       and detection services;

g.  Lost opportunity costs and lost wages associated with the time and effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

h.  Delay in receipt of tax refund monies;

i.  Unauthorized use of stolen Personal Information;

j.  The continued risk to their Personal Information, which remains in the possession of Soliant Health and is subject to further breaches so long as it fails to undertake appropriate measures to protect the Personal Information in their possession; and

k.  Current and future costs related to the time, effort, and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

63.  As a result of the Data Breach, Plaintiff and the Class Members now face, and will continue to face, a heightened risk of identity theft and fraud for the rest of their lives.

76

64.    As a long-standing member of the healthcare community, Soliant Health knew or should have known the importance of safeguarding employee Personal Information entrusted to it and of the foreseeable consequences of a breach. Despite this knowledge, however, Soliant Health failed to undertake adequate cyber-security measures to prevent the Data Breach email attack from happening.

65.    On the contrary, after conducting a study, the U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[35]

## CLASS ACTION ALLEGATIONS

66.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. Proc. 23. The Class is preliminarily defined as:

> All individuals whose Personal Information was compromised as a result of the Data Breach with Soliant Health which was announced on or about October 29, 2024.

67.    Excluded from the Class are Soliant Health and its subsidiaries and affiliates, officers, directors, and members of their immediate families, and any

---

[35] *Victims of Identity Theft, 2012*, U.S. DEP'T OF JUSTICE 10, 11 (Jan. 27, 2014), https://www.bjs.gov/content/pub/pdf/vit12.pdf.

entity in which it has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

68.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es) if necessary, before this Court determines whether certification is appropriate.

69.     *Fed. R. Civ. Proc. 23(a)(1) Numerosity:* The Class is so numerous such that joinder of all Members is impracticable. Upon information and belief, and subject to class discovery, the Class consists of 13,818 current and former employees of Soliant Health, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Soliant Health's records. Soliant Health has the administrative capability through its computer systems and other records to identify all Members of the Class, and such specific information is not otherwise available to Plaintiff.

70.     *Fed. R. Civ. Proc. 23(a)(2) Commonality and Fed. R. Civ. Proc. 23(b)(3) Predominance:* There are numerous questions of law and fact common to the Class. As such, there is a well-defined community of interest among the Members of the Class. These questions predominate over questions that may affect only individual Members of the Class because Soliant Health has acted on grounds generally applicable to the Class. Such common legal or factual questions

78

include, but are not limited to:

a.    Whether Soliant Health had a duty to protect employee Personal Information;

b.    Whether Soliant Health knew or should have known of the susceptibility of its systems to a data breach;

c.    Whether Soliant Health's security measures to protect its systems were reasonable considering best practices recommended by data security experts;

d.    Whether Soliant Health was negligent in failing to implement reasonable and adequate security procedures and practices;

e.    Whether Soliant Health's failure to implement adequate data security measures allowed the Data Breach to occur;

f.    Whether Soliant Health's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach, resulting in the unlawful exposure of the Plaintiff's and Class Members' Personal Information;

g.    Whether Plaintiff and Class Members were injured and suffered damages or other losses because of Soliant Health's failure to reasonably protect its systems and data network;

h.    Whether Plaintiff and Class Members are entitled to relief;

79

i.   Whether Soliant Health failed to adequately notify Class Members of the compromise of their Personal Information;

j.   Whether Soliant Health assumed a fiduciary duty and/or confidential relationship to Class Members when they entrusted it with their Personal Information;

k.   Whether Soliant Health breached its contracts with Class Members by failing to properly safeguard their Personal Information and by failing to notify them of the Data Breach;

l.   Whether Soliant Health's violation of FTC regulations constitutes evidence of negligence or negligence *per se*;

m.   Whether Soliant Health impliedly warranted to Class Members that the information technology systems were fit for the purpose intended, namely the safe and secure processing of Personal Information, and whether such warranty was breached.

71.   *Fed. R. Civ. Proc. 23(a)(3) Typicality:* Plaintiff's claims are typical of the claims of all Class Members, because all such claims arise from the same set of facts regarding Soliant Health's failures:

a.   to protect Plaintiff's and Class Members' Personal Information;

80

b.    to discover and remediate the security breach of its computer systems more quickly; and

c.    to disclose to Plaintiff and Class Members in a complete and timely manner information concerning the security breach and the theft of their Personal Information.

72.    *Fed. R. Civ. Proc. 23(a)(4) Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a more than adequate representative of the Class in that Plaintiff is a victim of the Data Breach, has suffered injury and damages such as misuse and fraudulent activity as a result of the Data Breach, and brings the same claims on behalf of herself and the putative Class. Plaintiff has no interests antagonistic to that of the Class Members. Plaintiff has retained counsel who are competent and experienced in litigating class actions, including class actions following data breaches and unauthorized data disclosures. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

73.    *Fed. R. Civ. Proc. 23(b)(2) Injunctive and Declaratory Relief:* Soliant Health has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

74.    *Fed. R. Civ. Proc. 23(b)(3) Superiority:* It is impracticable to bring

81

Class Members' individual claims before the Court. Class treatment permits many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

75.    A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.    The unnamed Members of the Class are unlikely to have an interest in individually controlling the prosecution of separate actions;

    b.    Concentrating the litigation of the claims in one forum is desirable;

    c.    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d.    Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this

type of litigation.

76.    Plaintiff knows of no unique difficulty to be encountered in the prosecution of this action that would preclude its maintenance as a class action.

77.    *Fed. R. Civ. Proc. 23(c)(4) Issue Certification:* Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

    a.    Whether Soliant Health owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing and safeguarding their Personal Information;

    b.    Whether Soliant Health's security measures to protect its data systems were reasonable considering best practices recommended by data security experts;

    c.    Whether Soliant Health's failure to institute adequate protective security measures amounted to negligence;

    d.    Whether Soliant Health failed to take commercially reasonable steps to safeguard prospective employee and employee Personal Information; and

    e.    Whether adherence to FTC data security recommendations,

and industry standards on data security would have reasonably prevented the Data Breach.

78.    Finally, all Members of the proposed Class are readily ascertainable. Soliant Health has access to employee and applicant names and addresses affected by the Data Breach. Using this information, Class Members can be identified and ascertained for the purpose of providing constitutionally sufficient notice.

## COUNT I
## NEGLIGENCE

79.    Plaintiff Stamps and the Members of the Class incorporate the above allegations as if fully set forth herein.

80.    Defendant Soliant Health owed a duty to Plaintiff and the Members of the Class to exercise reasonable care to safeguard their Personal Information in its possession, based on the foreseeable risk of a data breach and the resulting exposure of their information, as well as on account of the special relationship between Defendant and its employees, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

81.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Members of the Class's Personal Information

by disclosing and providing access to this information to third parties and by failing to properly supervise both the manner in which the information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

82.    Further, Defendant owed to Plaintiff and Members of the Class a duty to notify them within a reasonable time frame of any breach to the security of their Personal Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Members of the Class to take appropriate measures to protect their Personal Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the harm caused by the Data Breach.

83.    Soliant Health owed these duties to Plaintiff and Members of the Class because they are Members of a well-defined, foreseeable, and probable class of individuals who Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and Members of the Class's personal information and PII for employment purposes.

84.    Plaintiff and Members of the Class were required to provide their Personal Information to Defendant as a condition of applying for employment

and/or as a condition of employment, and Defendant retained that information.

85.    The risk that unauthorized persons would attempt to gain access to the Personal Information and misuse it was foreseeable. Given that Defendant holds vast amounts of this information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Personal Information, whether by email hacking attack, or otherwise.

86.    Personal Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Personal Information of Plaintiff and Members of the Class, and the importance of exercising reasonable care in handling it.

87.    Defendant Soliant Health breached its duties by failing to exercise reasonable care in supervising its employees and agents, and in handling and securing the Personal Information and PII of Plaintiff and Members of the Class which actually and proximately caused the Data Breach and Plaintiff's and Members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Members of the Class's injuries-in-fact.

88.    As a direct, proximate, and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Members of the Class have suffered or

will suffer injury and damages, including misuse and fraudulent activity, monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

89.     Defendant's breach of its common law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff's and Members of the Class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II
## NEGLIGENCE *PER SE*

90.     Plaintiff and the Class Members incorporate the above allegations as if fully set forth herein.

91.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class Members' Personal Information, PII.

92.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or

87

practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' and prospective employees' PII.

93.    The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive PII.

94.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect its employees' and prospective employees' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had required and solicited, collected, and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to employees in the event of a breach, which ultimately came to pass.

95.    The harm that has occurred in the Data Breach is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class Members.

96.    Defendant had a duty to Plaintiff and the Class Members to implement and maintain reasonable security procedures and practices to

safeguard their PII.

97.    Defendant breached its respective duties to Plaintiff and Members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class Members' PII.

98.    Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

99.    But-for Soliant Health's wrongful and negligent breach of its duties owed to Plaintiff and the Class, Plaintiff and the Members of the Class would not have been injured.

100.    The injury and harm suffered by Plaintiff and the Class Members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and Members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

101.    Had Plaintiff and Members of the Class known that Defendant did not adequately protect employees' and prospective employees' PII, Plaintiff and Members of the Class would not have entrusted Defendant with their PII.

102.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class Members have suffered harm, injury, and damages as set

forth in the preceding paragraphs.

## COUNT III
## BREACH OF EXPRESS/IMPLIED CONTRACTUAL DUTY

103.   Plaintiff and Members of the Class incorporate the above allegations as if fully set forth herein.

104.   Defendant offered to provide employment to Plaintiff and Members of the Class in exchange for payment.

105.   Soliant Health also required Plaintiff and the Members of the Class to provide Defendant with their Personal Information as a condition of applying for employment, and for employees as a condition of receiving renumeration for labor rendered.

106.   In turn, and through its Privacy Policy, Defendant agreed it would not disclose Personal Information it collects to unauthorized persons. Defendant also promised to maintain safeguards to protect their Personal Information.

107.   Plaintiff and the Members of the Class accepted Defendant's offer by providing Personal Information to Soliant Health, in applying for employment, and providing labor to Defendant and receiving renumeration.

108.   The agreement was supported by adequate consideration, as it was an exchange of labor for money.

109.   Implicit in the Parties' agreement was that Defendant would provide Plaintiff and Members of the Class with prompt and adequate notice of any and

all unauthorized access and/or theft of their Personal Information.

110. Plaintiff and the Members of the Class would not have entrusted their Personal Information to Defendant in the absence of such agreement with Defendant.

111. Soliant Health materially breached the contract(s) it had entered with Plaintiff and Members of the Class by failing to safeguard such Personal Information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and Members of the Class by:

  a. Failing to properly safeguard and protect Plaintiff' and Members of the Class's Personal Information;

  b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement;

  c. Failing to ensure the confidentiality and integrity of electronic Personal Information that Defendant received, maintained, and transmitted in violation of 45 C.F.R. § 164.306(a)(1).

112. The damages sustained by Plaintiff and Members of the Class as set forth in the preceding paragraphs were the direct and proximate result of Defendant's material breaches of its agreement(s).

113. Plaintiff and Members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

114. The covenant of good faith and fair dealing is implied into every contract. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

115. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

116. Defendant failed to advise Plaintiff and Members of the Class of the Data Breach promptly and sufficiently.

117. In these and other ways, Defendant violated its duty of good faith and fair dealing.

118. Plaintiff and Members of the Class have sustained damages as a result of Defendant's breaches of its agreement, including breaches thereof

92

through violations of the covenant of good faith and fair dealing.

## COUNT IV
## UNJUST ENRICHMENT

119. Plaintiff and Members of the Classes incorporate the above allegations as if fully set forth herein.

120. This claim is pleaded in the alternative to the breach of express/implied contractual duty claim.

121. Plaintiff and Members of the Classes conferred a benefit upon Defendant in the form of labor rendered in exchange for renumeration.

122. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and Members of the Class. Defendant also benefited from the receipt of Plaintiff's and Members of the Class's Personal Information, as this was required to facilitate the employment relationship and renumeration, as well as for the purpose of applying for employment.

123. As a result of Defendant's conduct, Plaintiff and Members of the Class suffered actual damages in an amount equal to the difference in value between the value of their labor with reasonable data privacy and security practices and procedures that Plaintiff and Members of the Classes were entitled to, and that labor without unreasonable data privacy and security practices and procedures that they received.

124. Under principals of equity and good conscience, Defendant should not

be permitted to retain the monetary value of the labor belonging to Plaintiff and Members of the Classes because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures for itself for which Plaintiff and Members of the Classes expended labor and that were otherwise mandated by federal, state, and local laws and industry standards.

125.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

## COUNT V
## INVASION OF PRIVACY

126.    Plaintiff and Members of the Class incorporate the above allegations as if fully set forth herein.

127.    Defendant publicized private details and facts not generally known to the public, not publicly available, and not of legitimate public concern about Plaintiff and the Class Members by disclosing and exposing Plaintiff's and the Class Members' Personal Information to enough people that it is reasonably likely those facts have and/or will become known to the public at large, including, without limitation, on the dark web and elsewhere.

128.    The disclosure of employees' and prospective employees' full names, Social Security numbers, and financial information, is particularly harmful and would be offensive to a reasonable person of ordinary sensibilities.

94

129.  Defendant has a special relationship with Plaintiff and the Class Members and Defendant's disclosure of Personal Information is certain to embarrass them and offend their dignity. Defendant should appreciate that the cyber-criminals who stole the Personal Information would fraudulently misuse that Personal Information, and further sell and disclose the data, just as they are doing. That the original disclosure is devastating to the Plaintiff and the Class Members, even though it originally may have only been disclosed to one person or a limited number of cyber-criminals, does not render it any less a disclosure to the public-at-large considering that said non-public information is now made public, and cannot be secured again.

130.  The tort of public disclosure of private facts is recognized in Georgia. *See Assoc. v. Smith*, 549 S.E.2d 454, 459 (Ga. Ct. App. 2001). Plaintiff's and the Class Members' Personal Information was publicly disclosed by Defendant in the Data Breach with reckless disregard for the reasonable offensiveness of the disclosure. Such disclosure is highly offensive and would be to any person of ordinary sensibilities. Defendant knew or should have known that Plaintiff's and the Class Members' PII is not a matter of legitimate public concern.

131.  As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been injured and are entitled to damages, as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Myra Stamps, individually and on behalf of all others similarly situated, the Class as heretofore identified, respectfully prays this Honorable Court for judgment as follows:

A.  Certification for this matter to proceed as a class action on behalf of the proposed Class under Fed. R. Civ. Proc. 23;

B.  Designation of Plaintiff as Class Representatives and designation of the undersigned as Class Counsel;

C.  Actual damages in an amount according to proof;

D.  Injunctive or declaratory relief;

E.  Pre- and post-judgment interest at the maximum rate permitted by applicable law;

F.  Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to O.C.G.A. 13-6-11 and applicable law;

G.  For attorneys' fees under the common fund doctrine and all other applicable law; and

H.  Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demand a trial by jury

96

pursuant to Fed. R. Civ. Proc. 38(b) on all claims so triable.

Dated: January 2, 2025

    Respectfully submitted,

*/s/ Joseph B. Alonso*
Joseph B. Alonso
Georgia Bar No. 13627
Daniel H. Wirth
Georgia Bar No. 873443
**Alonso & Wirth**
1708 Peachtree St., Ste. 303
Atlanta, GA 30309
Phone: 678-928-4509
Fax: 678-490-3668
jalonso@alonsowirth.com
dwirth@alonsowirth.com

J. Gerard Stranch, IV*
Grayson Wells*
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
gwells@stranchlaw.com

Lynn A. Toops*
Amina A. Thomas*
**COHEN & MALAD, LLP**
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com

athomas@cohenandmalad.com

*motion for admission pursuant to Fed. R.
Civ. Proc. 89(b) to be made

*Counsel for Plaintiff and the Proposed
Class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the attached pleading complies with the font

and point selections prescribed by Local Rule 5.1B & C and uses 13-point Century

Schoolbook font.


/s/ Joseph B. Alonso
Joseph B. Alonso
Georgia Bar No. 013627